UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TIBOR BODA,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:20-cv-00982 CKD (SS)<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will grant plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1965, was 52 years old when he filed his application for benefits, after working for years as a highway maintenance equipment operator. Administrative Transcript ("AT") 23, 35-37. His job duties included running heavy equipment such as backhoes, graders, pavers, rollers, and garbage trucks. AT 36. In October 2015, plaintiff was injured at work when,

1

according to medical notes, he was "walking along the side of a vineyard, working for Caltrans, and somehow stepped on the berm that is uneven on the side of the road and hyperextended his right knee." AT 244. After conservative treatment did not resolve plaintiff's symptoms, he underwent right knee surgery in February 2016. AT 239-43, 244, 246, 248-49.

Plaintiff applied on March 16, 2018 for DIB, alleging disability beginning November 1, 2017. AT 15, 23. Plaintiff alleged he was unable to work due to an injured right knee and diabetes. AT 63, 154-60, 163, 173-75. In a decision dated May 2, 2019, the ALJ determined that plaintiff was not disabled.[1] AT 15-25. The ALJ made the following findings (citations to 20 C.F.R. omitted):

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2023.
>
> 2. The claimant has not engaged in substantial gainful activity since November 1, 2017, the alleged onset date.
>
> 3. The claimant has the following severe impairments: osteoarthritis of the bilateral knees; internal derangement of the right knee; and bulging discs of the lumbar spine.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of light work.
>
> 6. The claimant is unable to perform any past relevant work.
>
> 7. The claimant was born on XX/XX/1965 and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.
>
> 8. The claimant has at least a high-school education and is able to communicate in English.
>
> 9. The claimant has acquired work skills from past relevant work.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy.
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2017 through the date of this decision.

AT 17-24.

The ALJ relied on vocational expert (VE) testimony to find that, based on plaintiff's RFC for the full range of light work, plaintiff could perform the occupation of Utility-Tractor Operator (light exertional level, semi-skilled). AT 24. Alternatively, the ALJ found that, even if plaintiff's acquired skills were not transferable, plaintiff's RFC for the full range of light work rendered him not disabled under Medical-Vocational Rule 202.14. AT 24.

////

////

////

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred in discounting the opinion of plaintiff's treating orthopedist, Dr. Peatman; (2) the RFC finding that plaintiff could perform the full range of light work is not supported by substantial evidence; (3) the ALJ erred in evaluating plaintiff's subjective complaints; (4) the ALJ committed reversible error in failing to address the lay evidence from plaintiff's wife; and (5) the Commissioner failed to establish that there is other work in the national economy that plaintiff can perform.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

    A.  Treating Physician's Opinion

Plaintiff asserts that the ALJ erroneously discounted the opinions of Dr. Thomas Peatman, plaintiff's treating orthopedist, who opined in 2018 that plaintiff was restricted to a limited range of sedentary work due to knee problems. Plaintiff argues that the ALJ's finding that Dr. Peatman's opinions were "not persuasive" is not supported by substantial evidence.

    1.  Legal Standard for Applications Filed On or After March 27, 2017

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014); see also Marsh v. Colvin, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

The Ninth Circuit previously has required that, in order to reject an uncontradicted opinion of a treating or examining physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017); Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014). Alternatively, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Trevizo, 871 F.3d at 675.

However, for disability applications filed on or after March 27, 2017, the Commissioner revised the rules for the evaluation of medical evidence at the administrative level. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844-01 (Jan. 18, 2017). Because plaintiff filed his SSI application on April 24, 2017, it is subject to the new rules for the evaluation of medical evidence.

The revised rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability;

5

consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5). The most important of these factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1). Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1). The ALJ will articulate how she considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b). When a single medical source provides multiple opinions and findings, the ALJ must articulate how they were considered in a single analysis. 20 C.F.R. § 416.920c(b)(1).

    2. <u>Analysis</u>

As noted above, plaintiff had surgery on his right knee in February 2016 after overextending his knee in a work-related injury the previous year.

In June 2018, plaintiff began treatment with Dr. Thomas Peatman, an orthopedist, who treated plaintiff for about nine months. AT 307-33, 361-67. In his initial medical note, Dr. Peatman wrote that plaintiff presented for workplace-related right knee pain after ACL right knee reconstruction surgery in February 2016. AT 326. Dr. Peatman noted that plaintiff's "severe right knee pain" was exacerbated by "buckling episodes," and that his "moderate left knee pain" was "likely secondary to compensation for the right knee injury." AT 326-328. He noted that plaintiff "[c]urrently has mild to moderate achy right knee pain and instability worse with prolonged walking and transition movements." AT 326. Examination of plaintiff's knees revealed some normal findings along with mild effusion; crepitus; tenderness to palpitation over medial and joint lines; flexion of 125 degrees; laxity in anterior drawer test[2]; positive Lachman

---

[2] "The Anterior Drawer Test is commonly used in orthopedic examinations to test for anterior cruciate ligament (ACL) tears. . . . This test is considered positive if there is a soft end feel to the

test[3]; and equivocal pivot shift test.  AT 327.  Dr. Peatman diagnosed plaintiff with "sprain cruciate lig knee" and noted possible treatments including "cortisone injections, bracing, and surgical intervention."  AT 327.  He ordered an MRI on plaintiff's right knee.  AT 327.

One month later, in July 2018, plaintiff informed Dr. Peatman that he had developed right hip pain along with his right leg pain, which was "worsening sharp moderate to severe . . . with intermittent radiation to right hip," exacerbated by "buckling episodes and prolonged standing."  AT 318.  Plaintiff reported his right hip pain as a level 6/10 and "constant moderate achy."  AT 318, 321.  Dr. Peatman's examination again revealed anterior drawer laxity, positive Lachman's, and equivocal pivot test.  AT 319.  Dr. Peatman reviewed plaintiff's June 2018 x-ray and noted an ACL reconstruction "with tunnels and hardware in slight misalignment," but no evidence of fracture or dislocation.  AT 319.  He diagnosed plaintiff with "mild right knee osteoarthritis," administered a cortisone injection, and outlined treatment plans including surgery if conservative treatment did not resolve plaintiff's pain symptoms.  AT 319.  He also requested a "right hip evaluation for compensatory injury."  AT 319-20.

In subsequent office notes, Dr. Peatman documented plaintiff's ongoing right knee pain, "worse with standing.  He has buckling and giving out."  AT 311.  Based on his examination, he noted marked medial and lateral joint line tenderness; 0-110 flexion; subjective instability to valgus; anterior drawer laxity; positive Lachman's test; and equivocal pivot.  AT 311-312.  He diagnosed plaintiff with "mild right knee osteoarthritis" and "right hip pain."  AT 312.  Though he noted that the steroid injection from the last visit was "not helpful," he requested a right knee injection for arthritis and a knee brace for "instability."  AT 312.  Dr. Peatman also noted that plaintiff could perform "[d]esk work only."  AT 312.

Dr. Peatman completed two Medical Source Statement forms for plaintiff in July and

---

translation of the tibia."  Source: https://physicaltherapyweb.com/anterior-drawer-test-orthopedic-examination-knee/ (last visited March 8, 2022).

[3] "The Lachman test is a passive accessory movement test of the knee performed to identify the integrity of the anterior cruciate ligament (ACL). . . . Anterior translation of the tibia associated with a soft or a mushy end-feel indicates a positive test."  Source: https://www.physio-pedia.com/Lachman_Test (last visited March 8, 2022).

September 2018.  AT 340-43.  On the forms, Dr. Peatman indicated clinical signs of abnormal gait, sensory loss, muscle atrophy, muscle weakness, swelling, tenderness, and crepitus.  AT 340, 342.  He opined that, in an 8-hour workday, plaintiff was limited standing and walking for two hours, among other functional limitations, and could perform sedentary work.  AT 340, 342.  Dr. Peatman also opined that plaintiff would miss more than four days a month due to his impairments.  AT 341.

The ALJ evaluated Dr. Peatman's opinions as follows:

> Thomas Peatman, M.D., the claimant's own physician, stated on July 26, 2018 and September 18, 2018 that the claimant was restricted to a limited range of sedentary work and would be absent from work more than 4 days per month due to knee disorder.  I find that this opinion is not persuasive because it is not supported by Dr. Peatman's own treatment notes, which did not document serious findings or signs that support such extreme limitations.  In fact, on July 26, 2018, the day Dr. Peatman rendered his first opinion, he examined the claimant and noted that the claimant had a normal gait and was not using anything to assist with ambulation.  This fact directly contradicts Dr. Peatman's opinion.  In addition, the opinion is inconsistent with the generally adequate musculoskeletal function documented in the records from other medical sources . . . Moreover, the opinion is contradicted by the diagnostic images of the claimant's knees, which showed only mild findings.  Furthermore, the opinion is inconsistent with the fact that the claimant is not taking any opiate analgesics, and ibuprofen and Tylenol admittedly help relieve his pain to some extent (hearing testimony).

AT 22.

The two key factors in whether to uphold the ALJ's determination are supportability and consistency, as set forth above. The undersigned addresses these factors below.

*Supportability.*  As to the first reason for rejecting Dr. Peatman's opinion—lack of support from contemporaneous treatment notes—Dr. Peatman's notes contain more supporting evidence than the ALJ lets on, including multiple positive clinical findings and documentation of plaintiff's severe-to-moderate right knee pain, instability and buckling; left knee pain, and right hip pain.  In progress notes, Dr. Peatman wrote that a cortisone injection did not resolve plaintiff's pain, requested a brace for his right knee, and noted he could perform desk work only.  Though Dr. Peatman observed in July 2018 that plaintiff had a normal gait and did not use

anything to assist with walking, he also noted plaintiff's history of his right knee buckling and giving out and ordered a brace.  Contrary to the ALJ's finding, these facts do not "directly contradict" Dr. Peatman's opined stand/walk limitations.

The ALJ also found that Dr. Peatman's stand/walk limitations were undermined by diagnostic images of plaintiff's knees, which showed "only mild findings."  However, the ALJ failed to address the fact that plaintiff's July 2018 right knee MRI showed a "chondral defect" or area of damaged cartilage.[4]  AT 324.  Nor did the ALJ address a July 2018 x-ray showing that the hardware in plaintiff's right knee was in "slight misalignment." AT 319.  The ALJ did not refer at all to a January 2019 x-ray of plaintiff's right knee, showing bilateral primary osteoarthritis with sprain of the anterior cruciate ligament in the right knee.  AT 464.  Overall, the relevant objective medical evidence is more supportive of Dr. Peatman's opinions than the ALJ acknowledged in his decision.

***Consistency factor.***  The ALJ found Dr. Peatman's opinions to be undermined by select portions of the record (i.e., plaintiff's "generally adequate musculoskeletal function" and non-reliance on opiate painkillers), but the decision did not explain why, given plaintiff's history of knee/hip pain, buckling, and other documented symptoms.

Notably, Dr. Peatman's stand/walk limitations were broadly consistent with the opinions of multiple other examining doctors:

- Dr. Michael Charles, who examined plaintiff in January 2018 for a Qualified Medical Evaluation and diagnosed him with internal derangement of the right knee with "persistent instability."  AT 355.  In an opinion discounted by the ALJ, Dr. Charles found that plaintiff "could walk up to only 20 minutes at a time, must rest for 10 to 15 minutes after standing or walking for 20 minutes" and "was able to sit for only 30 minutes at a time," along with other functional limitations.  AT 22-23,

---

[4] "A chondral defect refers to a focal area of damage to the articular cartilage (the cartilage that lines the end of the bones).  An osteochondral defect refers to a focal area of damage that involves both the cartilage and a piece of underlying bone. These can occur from an acute traumatic injury to the knee or an underlying disorder of the bone." Source: https://stanfordhealthcare.org/medical-conditions/bones-joints-and-muscles/chondral-osteochondral-defect.html (last visited March 22, 2022).

citing AT 352-58.

- Dr. Shahid Ali, who examined plaintiff in May 2018 and concluded that he was limited to 4 hours standing/walking in an 8-hour workday. AT 297-300. The ALJ discounted this opinion. AT 22, 300.
- Dr. Gerald Barnes, who conducted an orthopedic examination in January 2019 and conclude that plaintiff was limited to 2 hours standing/walking in an 8-hour workday. AT 335-39. The ALJ discounted this opinion. AT 22, 339.

The ALJ did not fully credit any medical opinion of record, but partially credited the opinions of two State agency non-examining medical consultants to arrive at the physical RFC. AT 21-22. Significantly, Dr. Peatman's assessment of stand/walk limitations is roughly consistent with every doctor who examined plaintiff in person and opined on his functional limitations.

Dr. Peatman's opinions are also consistent with plaintiff's testimony (as summarized by the ALJ) that plaintiff "has difficulty with physical activities and needs to change position, rest, lie down, and elevate his legs frequently throughout the day." AT 19. The ALJ discounted plaintiff's subjective symptom testimony (AT 23), a finding which is the subject of another claim in this action.

Finally, Dr. Peatman's opinions are generally consistent with the lay testimony with plaintiff's wife, who testified that plaintiff could no longer "climb in and out of work trucks or climb up and down steep inclines, walk on uneven ground" or do various household tasks, and had "difficulty getting up out of chairs, climbing stairs, sleeping at night because he can't find a comfortable position for his back, hips, and his knees." AT 215. The ALJ did not cite or acknowledge this testimony in his decision, which is the subject of a separate claim.

In light of the supportability of Dr. Peatman's opinions and their consistency with large parts of the record, the undersigned concludes that the ALJ's rejection of these opinions was harmful error, and plaintiff is entitled to summary judgment.[5]

---

[5] The court does not reach the remaining claims.

10

CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole creates serious doubt as to whether the claimant was, in fact, disabled during the relevant period. On remand, the ALJ is free to develop the record as needed, including asking a vocational expert hypothetical questions about available jobs based on a revised RFC. The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during

the relevant period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 22) is granted;

2. The Commissioner's cross-motion for summary judgment (ECF No. 28) is denied;

3. Judgment is entered for plaintiff; and

4. This matter is remanded for further administrative proceedings consistent with this order.

Dated:  March 23, 2022

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/boda0982.dib.ckd